STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Davine Bigelow, <u>et</u>    }
<u>al.</u>                                      }
                                               }   Docket No. 8-1-00 Vtec
                                               }
                                               }

<u>DECISION and ORDER</u>

Appellants Davine Bigelow, Patrick McWilliams, David G. Cassidy, Mary Cassidy, James Nolan, Mary Beth Nolan, Linda Emmons, Suzanne Gray Osterman, John Matsinger, Lewis F. Springer and Margaret Springer appealed from a decision of what appears to be a combined Zoning Board of Adjustment and Planning Commission (ZBA/PC) of the Town of Danville, granting a conditional use permit and possibly also[1] granting other approvals to the Danville Rescue Squad. Appellants are represented by Edward R. Zuccaro, Esq.; Appellee-Applicant Danville Rescue Squad, Inc. is represented by Charles D. Hickey; the Town is represented by Judith A. Salamandra Corso, Esq.

The court resolved certain preliminary issues by summary judgment, and an evidentiary hearing on the conditional use permit was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties to the proposed site and to see a similar building in another part of town. The parties were given the opportunity to submit written requests for findings and memoranda of law, but declined to do so, except for Appellee-Applicant= s A Comment on Evidence@ calculating the distance traveled by a vehicle at 30 miles per hour. Upon consideration of the evidence, the site visit, and the written comment, the Court finds and concludes as follows on Questions 1(b) and (c) regarding conditional use approval. (See footnote 1, above.)

Appellee-Applicant is a Vermont not-for-profit corporation which uses volunteers to provide emergency services to the general public in the Town of Danville and surrounding communities. The project consists of the construction of a building like a single-family residence in appearance, with attached larger-than-single-family garage with 10-foot garage doors to house two emergency vehicles., and associated parking and lighting. It is proposed to provide new headquarters for Appellee-Applicant, including a garage, office space, a meeting room, and storage space. An existing dilapidated garage on the property would be removed as part of the project.

The property is located on Brainerd Street in the Medium Density Residential I zoning district and in a Design Control district. Appellee-Applicant originally applied for a conditional use permit (' 207), a subdivision permit, a design control permit (site plan approval under ' ' 208 and 401), and a variance from the rear and side setbacks and the minimum lot size. While the matter was pending, the parties informed the Court that Appellee-Applicant was filing a new subdivision permit resulting in a revised configuration of property that would comply with the rear and side setbacks and the minimum lot size, making review of the variance issues (Question 2 of the Statement of Questions) unnecessary. Accordingly, the hearing went forward only on the two issues raised pertaining to the merits of conditional use approval for the proposal (Questions 1(b) and 1(c) of the Statement of Questions: whether the proposal adversely affects traffic on roads and highways in the vicinity, and whether the proposal adversely affects the character of the area).

We note specifically that because of this procedural history, the proposal is not before the Court for anything other than these two elements of conditional use approval. If site plan approval, design approval of plans, a curb cut permit for the new driveway location, or any subdivision or

variance approval is required for this project, it must still be obtained from the ZBA, Planning Commission, or Selectboard as appropriate.

The project is located in a residential district in which residential lots of an acre or less line the road, but which includes pasture land and rural views across the fields, although it is located within approximately a mile of the town green. A cemetery is located across the road and to the south of the proposed site. Between the proposed site and the town green and post office at Park Street, the only other-than-single-family residential uses are the Dowsers= Hall, used for offices and public meetings, and an apartment building and daycare use just south of the Park Street intersection. The neighbors to the north of the site keep horses on their property, and Brainerd Street is used for pedestrian, bicycle and horse traffic as well as for vehicular traffic. Brainerd Street is used for through traffic, including heavy truck traffic, to Route 5 at Barnet.

The post office building is located on Park Street, which connects Peacham Road with Brainerd Street. Park Street is parallel to Route 2 and one block to its south. The State of Vermont Department of Transportation proposes to close Brainerd Street between Route 2 and Park Street, to improve the configuration of the Town= s main intersection at Route 2. The consequence of this proposed change will be that all Brainerd Street traffic to or from Route 2 will have to travel from Brainerd Street, turn onto Park Street and again onto Peacham Road, or vice versa. The traveled way of Brainerd Street is approximately 26 feet wide except that it is approximately 24 feet wide just to the south of its intersection with Park Street. The combination of the turn from Park Street and the narrower pavement at this location creates a potential for vehicle (or vehicle/pedestrian) conflict at this location.

Appellee-Applicant has ten members and maintains two emergency vehicles. The members make approximately 188 ambulance trips a year, or approximately one every two days, of which 151 are emergency trips and 37 are non-emergency scheduled trips. For each trip, two or three rescue squad members drive to the site in their own vehicles, park their vehicles, pick up the necessary equipment, and drive from the site in the ambulance, using the lights and siren if necessary on the outgoing trip. They return to the site without lights or siren after the call has been appropriately dealt with, and leave the site again in their own vehicles. The building will have a meeting room, a kitchenette, an office, and a dispatch area, and will have sleeping facilities in case the members need to stay overnight. Appellee-Applicant= s members also plan to use the property for their own meetings, which are now held monthly at the Dowsers= Hall, and may plan to hold functions at which they could bring guests. Appellee-Applicant also plans to use the property for the classes it gives to the general public in CPR (cardiopulmonary resuscitation), which classes are now held in the Dowsers= Hall or other public meeting rooms.

The property now contains only a dilapidated wood garage building located close to the road. It will be demolished in connection with this project. The existing driveway for the garage passes to the south of the existing garage. The proposed garage and building are proposed to be set back from the road, with the driveway to pass to the north of the location of the former garage, very close to the north property line. The property was used from at least 1972 through 1980 to house the ambulance in the existing wood garage building in the summers. No traffic conflicts were experienced when the ambulance was kept at that location in that time period; however, no evidence was offered regarding the frequency of emergency ambulance calls in the summer months twenty to twenty-eight years ago.

Appellee-Applicant provided no measurements of the sight distances in either direction from the proposed new driveway (or from the old driveway) on Brainerd Street. Appellee-Applicant= s president, who has experience driving or riding in the ambulance, believes the sight distances to be adequate. The road approaching the site from the south travels up a long hill to approximately the location of the cemetery located across the road and to the south of the site. It makes a curve at the top of the hill near the cemetery, and the site= s driveway cannot be seen by a vehicle approaching from the south until the vehicle has passed around that curve. Similarly, if the

ambulance must travel from the site to the south, its driver will not see vehicles approaching from the south until they have negotiated the curve from the south. Appellant David Cassidy measured the sight distance from the south as > slightly less than one-tenth of a mile= (or approximately 500 feet) using the odometer on his personal vehicle; there was no evidence as to the calibration of that odometer over that short a distance. At the posted speed limit of 30 miles per hour, a vehicle would travel 500 feet in approximately 11.36 seconds. Vehicles often travel faster than the posted speed limit on that stretch of Brainerd Street. No evidence was presented as to accepted standards for safe sight distances under the circumstances of this location.

No site plan other than a sketch was supplied to the Court. The sketch shows only the proposed setbacks and location of the building; that is, no landscaping, paving, parking or lighting plans or specifications were supplied to the Court. Appellee-Applicant intends to provide outdoor parking for approximately eighteen vehicles but at the time of trial had not designed or located the spaces or the landscaping or screening for those spaces. Appellee-Applicant intends to provide an outdoor porch light, and a light over the garage doors. Appellee-Applicant has not proposed whether any lighting will be motion-sensitive, on a timer, or with down-cast fixtures to minimize off-site glare. The garage doors will face to the north, and will be visible from the neighbor= s house to the north, unless screening is installed.

Appellee-Applicant proposes to erect an antenna on top of the building to serve a 35-watt transmitter, but no evidence was provided as to its size, height or appearance. Appellee-Applicant= s president stated that Appellee-Applicant may choose to perform the dispatching function using the existing antenna at the fire station, connected to the site by a land line. Accordingly, no antenna can be considered for the site on the basis of this inadequate information.

Appellee-Applicant= s vehicles, equipment and supplies are now located together with the fire department in a facility on Peacham Road, but the fire department needs all the space and there is no room for storage of the rescue squad= s materials and equipment. Because Appellee-Applicant= s traffic now has access to Route 2 via Peacham Road, and that access would continue to be via Peacham Road once the Vermont Agency of Transportation has closed off the last block of Brainerd Street, we will analyze the proposal= s traffic impacts only as they pertain to Brainerd Street and Park Street and its intersection with Peacham Road, and not as they pertain to the Peacham Road/Route 2 intersection.

Effect on the safety of traffic

The proposal as presented to the Court does not adversely affect the volume of traffic on Brainerd Street, but it does adversely affect the safety of traffic on roads and highways in the vicinity, in that the sight distances from and of the new driveway were not shown to be adequate. Moreover, under the present plans, high-speed ambulance traffic will experience problems negotiating the narrow area of Brainerd Street just before the intersection with Park Street, the left turn onto Park Street, and the right or left turn onto Peacham Road, especially during times of the day when the Post Office, the Day Care Center, and to a lesser extent the Dowsers= Hall, are experiencing a high traffic volume.

It is possible that a proposal for this use at this site could be designed so as not to adversely affect the safety of traffic on roads and highways in the vicinity, with the installation of warning lights (blinking red or blinking yellow) automatically triggered by the approach of the ambulance, located at the driveway on Brainerd Street and/or at the Brainerd Street/Park Street intersection. However, no such proposal was made to the ZBA or to the Court and no evidence was presented about the need for or usefulness of such lights, therefore any such proposal must be made to the ZBA before the Court could consider it.

Effect on the character of the area

The appearance of the proposed building and its location on the lot does not adversely affect the character of the area. However, the appearance of the proposed outdoor lighting, parking, and antenna, at least in the rudimentary form in which these elements were presented to the Court, and without any proposal for screening or landscaping, does have the potential to adversely affect the rural residential character of the area. Moreover, the proposed use of the building will adversely affect the character of the area, if it is used for more than just the emergency and scheduled calls, office functions, and business meetings of the rescue squad.

It is possible that a proposal for this use at this site could be designed so as not to adversely affect the character of the area, depending upon plans for an off-site antenna; restriction of on-site events to the monthly meetings of the squad members, with no public or social events on site; the design and location of parking and lighting, including the use of motion-sensitive and down-cast outside lighting; proposals for landscaping and screening of the parking areas and the garage doors; and proposals for the placement of the garage doors so as to exit towards the rear of the property. However, no such proposals were made to the ZBA or to the Court and no evidence was presented about the need for, design of or efficacy of such proposals.

Some of these possible proposals are those that would normally be presented in an application for site plan approval. It is possible that a more complete application may arise out of preparations for the site plan approval that appears to be required in this case due to the property= s location in the Design Control zoning district.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that conditional use approval is DENIED on the basis of the evidence provided to the Court. This denial is specifically without prejudice to the submittal of a revised proposal to the ZBA or the submittal of additional evidence to the Court.

Dated at Barre, Vermont, this 30th day of July, 2001.

Merideth Wright
Environmental Judge

---

**Footnotes**

1.    The summary judgment decision in this matter found that the document which was presented to the Court as the "decision" of the Planning Commission and Zoning Board of Adjustment was entirely inadequate and devoid of findings on the criteria required for the various approvals, sufficiently so that the Court cannot determine whether site plan approval was granted. The parties agreed among themselves that the decision was adequately expressed in the minutes of the hearing on the decision appealed from, but never supplied those minutes in the course of the trial. Accordingly, the Court cannot determine Questions 1(a) or 2(b) of the Statement of Questions, and the only issues before the Court in the present proceeding are Questions 1(b) and (c).